**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00762-REB

BRONWYN K. PARENT,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed March 25, 2013, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of an affective disorder, a

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

personality disorder, gastroesophageal reflux disease, and keratoconus.[2]  After her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on August 15, 2011.  At the time of the hearing, plaintiff was 33 years old.  She has high school education and past relevant work experience as a cashier, fast food worker, bagger, and demonstrator.  She has not engaged in substantial gainful activity since February 23, 2009, her alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform medium work with certain postural and non-exertional restrictions.  Although this finding precluded plaintiff's past relevant work, the ALJ determined that there were other jobs existing in significant numbers in the national and local economies that she could perform.  He therefore found plaintiff not disabled at step 5 of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her

---

[2] Keratoconus is a condition in which the cornea of the eye bulges outward, becoming cone-shaped.  The condition impairs vision and also may cause blurred vision, glare or halos at night, or streaking of lights.  *See* WebMD Eye Health Center, **Eye Health and Keratoconus** (available at http://www.webmd.com/eye-health/eye-health-keratoconus) (last accessed September 10, 2014).

physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity

>to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[3]  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  ***Id.***  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

---

[3] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred evaluating the opinions of her treating mental health provider and in discrediting her subjective reports of disabling limitations. Finding no such reversible error, I affirm.

Plaintiff contends the ALJ erred in his consideration of the opinion of her treating source, Jill Ridley, NP. In May, 2010, Ms. Ridley completed a Mental Capacity Assessment on plaintiff's behalf in which she opined that plaintiff suffered from marked and extreme limitations in many aspects of work-related mental functioning. (Tr. 233-235.) The ALJ assigned this opinion "no weight," on the grounds that it was not issued by an acceptable medical source, was conclusory, and was unsupported by the evidence of record. (Tr. 35-36.) Although plaintiff suggests that these reasons are either legally and/or factually insupportable, I conclude otherwise.

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); ***see also Watkins v. Barnhart***, 350 F.3d 1297, 1300 (10th Cir. 2003). However, Ms. Ridley, a nurse practitioner, is not considered an "acceptable medical

source." *See* **Social Security Ruling 06-03p**, 2006 WL 2329939 at *1 (SSA Aug. 9, 2006). As such, she can neither issue medical opinions, *see* 20 C.F.R. § 404.1527(a)(2), nor be considered a treating source whose opinion must be evaluated to determine whether it is entitled to controlling weight, *see* 20 C.F.R. § 404.1513(d). *See also* **Social Security Ruling 06-03p**, 2006 WL 2329939 at *2; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

Nevertheless, the opinions of "other" medical sources such as Ms. Ridley still must be considered, applying the same factors as are generally used to assess treating source opinions. **Social Security Ruling** 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6). Among these factors are whether the opinion is consistent with and supported by the other evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.") & 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ invoked both these considerations in characterizing Ms. Ridley's opinion as "quite conclusory, providing very little explanation of the evidence relied on in forming the opinion." (Tr. 35-36.) Thus, the ALJ did not reject Ms. Ridley's opinion merely because she was not an acceptable medical source.

Moreover, his determination that Ms. Ridley's opinion was conclusory finds ample support in the record. As support for her opinions, Ms. Ridley stated that plaintiff had a "significant learning impairment as well as depressive [symptoms] that are profound." (Tr. 235.) Perhaps cognizant that this statement is, indeed, quite

conclusory, plaintiff maintains that the ALJ should have considered whether Ms. Ridley's treatment notes supported her conclusions. Assuming *arguendo* that it constituted error not to do so, there is nothing in Ms. Ridley's scant records which undermines the ALJ's determination regarding the weight to be afforded this opinion. The notes of Ms. Ridley's two visits with plaintiff – the first just one month before she authored the opinion at issue[4] – do in fact provide little support for the extreme limitations she advocated.[5] Because the evidence fails to demonstrate that Ms. Ridley's treatment notes supported the marked and extreme limitations she endorsed, any failure to more specifically analyze those records does not warrant remand. **See Williams v. Chater**, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal.").

The ALJ also discredited Ms. Ridley's opinion as being unsupported by the other evidence of record.[6]  The ALJ thoroughly reviewed all the records of plaintiff's mental

---

[4] The brief nature of plaintiff's treating relationship with Ms. Ridley further supports the ALJ's conclusion regarding the weight to be afforded to her opinions. **See** 20 C.F.R. § 404.1527(c)(2).

[5] During plaintiff's first visit, Ms. Ridley noted that although plaintiff was depressed, she appeared "cooperative" and "polite"; that her affect was "stable," "congruent," and "normal"; that her thought process was "logical and goal directed"; she was alert and oriented to time, place, and person; that her memory, attention, speech, and comprehension were all normal; and that she acted appropriately in social situations. (Tr. 240.) When Ms. Ridley next saw plaintiff one month later, they "spent the majority of the session going over paperwork for her application for disablity[.]" Nevertheless, with the exception that plaintiff's thought process was now described as "slowed" and "blocked," the remainder of the parameters discussed above remained essentially normal. (**See** Tr. 242.)

[6] Generally, the observation that a doctor naturally advocates for her patient provides no grounds in itself for discrediting a medical source opinion. **McGoffin v. Barnhart**, 288 F.3d 1248, 1253 (10th Cir.2002) (citing **Frey v. Bowen**, 816 F.2d 508, 515 (10th Cir. 1987)).  Here, however, the ALJ made such an observation in the context of trying to account for the extreme divergence between Ms. Ridley's opinion and the medical evidence. (**See** Tr. at 36.) Moreover, his determination to afford her opinion no weight is more than adequately supported by the other specific, legitimate, and well-supported reasons he articulated for that decision, and thus any error in relying on this fact undoubtedly was harmless. **See Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988).

7

health treatment (Tr. 30-31), as well as the various opinions of record regarding the limitations imposed by plaintiff's mental impairments (Tr. 34-35).  Plaintiff's suggestion that this assessment is erroneous essentially asks me to reweigh the evidence, which I am neither inclined nor empowered to do.  **See Thompson**, 987 F.2d at 1487.  Conflicts in the evidence are for the ALJ to resolve, and he did not err in discharging that duty here.  **Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988); **Gleason v. Apfel**, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999).

In a related argument, plaintiff maintains that the ALJ should have more thoroughly considered her GAF scores.  "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  **Langley v. Barnhart**, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (Text Revision 4th ed. 2000) ("DSM-IV")).  The ALJ discounted plaintiff's GAF scores on the ground that they "provide[d] a limited indication of the claimant's overall level of functioning over an extended period."  (Tr. 30-31.)  Plaintiff points out, however, that she consistently was reported as having GAF scores of 50 – indicating "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)," **DSM-IV** at 34 – over a period of sixteen months.  She argues that this longitudinal evidence thus was probative of her overall functioning and should have been afforded greater *gravitas* in the ALJ's analysis.

I am unpersuaded.  As the ALJ correctly noted, a low GAF score does not

mandate a finding of disability. *See Seymore v. Apfel*, 1997 WL 755386 at *1–2 (10th Cir. Dec. 8, 1997); *Cox v. Apfel*, 2000 WL 1472729 at *9 (D. Kan. Feb. 24, 2000). More particularly, although a "GAF score of fifty or less . . . does suggest an inability to keep a job," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004), that determination is not entirely self-evident, *see id.* (unexplained GAF score not probative: "[t]he claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere"); *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. July 17, 2003) ("[T]he GAF rating may indicate problems that do not necessarily relate to the ability to hold a job[.]"). Although GAF scores may be highly probative when coupled with detailed description of how rating affects claimant's ability to work, *Eden v. Barnhart*, 2004 WL 2051382 at *2 (10th Cir. Sept. 14, 2004); *Seymore*, 1997 WL 755386 at *2, here, no medical or other source ever made the critical connection between plaintiff's GAF scores and her work-related functioning. The ALJ in this case did not ignore plaintiff's GAF scores, *cf. Lee*, 117 Fed. Appx. at 678, and no medical or other source has ever "indicated [that plaintiff] could not work or [that her] impairments interfered with [her] ability to keep a job." *Oslin*, 69 Fed. Appx. at 947. Accordingly, if there was any error in this regard, it undoubtedly was harmless. *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence).

     Finally, plaintiff contends that the ALJ erred in discrediting her testimony regarding her functional limitations. More particularly, she suggests that the ALJ failed to properly apply the analysis required by *Luna v. Bowen*, 834 F.2d 161 (10th Cir.

9

1987),[7] for evaluating subjective complaints of pain. This argument is belied by the record.[8] The ALJ specifically referred to the regulations and interpretive guidelines in his opinion (*see* Tr. 28), and nothing therein gives me reason to believe that he did not consider and apply the relevant factors, or that he did so incorrectly. *See Cox*, 2000 WL 1472729 at * 8 (citing **Hamilton v. Secretary of Health & Human Services**, 961 F.2d 1495, 1498-99 (10th Cir. 1992)). In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." **White v. Barnhart**, 287 F.3d 903, 909 (10th Cir. 2001) (citing **Kepler v. Chater**, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id.* at 910; *see also* **Qualls v. Apfel**, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ here gave multiple, specific, legitimate reasons for his determination that plaintiff's allegations were entitled to less than full weight. (*See* Tr. 33-34.) There was no reversible error in this regard.

---

[7] In **Luna**, the Tenth Circuit outlined a tripartite test for evaluating subjective complaints of pain:

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

***Musgrave***, 966 F.2d at 1375-76 (citing **Luna**, 834 F.2d at 163-64). The Commissioner's regulations have distilled this test into two parts, but the required analysis is the same. *See* 20 C.F.R. §§ 404.1529 & 416.929; *see also* **Social Security Ruling** 96-7p, 1996 WL 374186 (SSA July 2, 1996)..

[8] Contrary to plaintiff's suggestion, there is no requirement that the ALJ specifically delineate which of plaintiff's allegations he finds credible and which he rejects. It is clear that the ALJ found plaintiff's statements not credible to the extent they were inconsistent with his determination of her residual functional capacity. So long as that determination is adequately supported by specific citation to the evidence of record, as was done here, no greater specificity is required.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated September 10, 2014, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge